Barbara WRIGHT, Petitioner,

v.

DEPARTMENT OF TRANSPORTATION, Respondent.

No. 89–3284.

United States Court of Appeals, Federal Circuit.

March 30, 1990.

William Lafferty, Boston, Mass., submitted for petitioner.

Donald E. Kinner, of the Civ. Div., Dept. of Justice, Washington, D.C., submitted for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Peterson, Asst. Director, and Randall J. Bramer.

Before NIES, BISSELL *, and ARCHER, Circuit Judges.

NIES, Circuit Judge.

Barbara Wright appeals from the decision of the Merit Systems Protection Board Docket No. BN07528610058–1, affirming the action of the Department of Transportation, Federal Aviation Administration (FAA) which removed her from her position as an Air Traffic Control Specialist, GS–11, for failure to satisfactorily complete upgrade training required for progression to full performance level. 40 MSPR 355. We reverse.

### Background

Barbara Wright was accepted for training under the National Enroute Training Program, an FAA program for the development of air traffic controllers.[1] At the time of entering the program, Wright was an experienced pilot with a commercial instrument, instrument instructor, multi-engine rating. She had no prior air traffic control experience before beginning her employment with the agency. Until her failure at Phase XI, she had been rated satisfactory for several years and had received within-grade increases as she progressed through the training program. There is no disagreement that she failed Phase XI, a part of the program entitled "Radar Control Training."

Wright maintains that her difficulties began during Phase VIII of her training. Phase VIII involves training in manual and radar-associated functions. Training in the manual function accustoms the developmental controller to controlling aircraft by coordinating with facilities from printed flight information. Training in the radar function familiarizes the developmental controller with the operation of the radar keyboard and the complexities of vertical separation of aircraft. The Instructional Program Guide (IPG) in effect at the time Wright went through the program provided that a controller was to receive a series of eight radar-associated instructional problems in a simulated (laboratory) environment under an instructor's supervision. The instructor was required to provide a critical evaluation to the developmental controller at the end of each problem. One problem, including the evaluation by the supervisor, could last as long as one and a half hours.

The Board found the agency failed to provide the trainees of Wright's class with the Phase VIII training required by the IPG. In particular, the IPG required a series of eight problems on the radar keyboard under the supervision of an instructor. Wright's class did not receive the series of eight radar problems and, of course, did not receive the accompanying evaluation. Indeed, her class did not receive even one of the specified eight problems.

The supervisor of these trainees left the class to operate in the laboratory on its own, in a self-study atmosphere, contrary to the requirements of the IPG. The instruction given emphasized the manual, rather than radar-associated training. The radar training imparted basic knowledge of radar functions, not proficiency. Wright passed through Phase VIII, having satisfactorily performed the work actually as-

---

* Judge Bissell, who died February 4, 1990, did not participate in this opinion.

1. The facts stated herein are those found by the Board or are uncontroverted.

signed. Phases IX and X were directed to manual functions; Phase Xa, to basic radar knowledge. There was no emphasis on proficiency or speed in radar operation until Phase XI, where the instructors expected the trainee to have already developed proficiency.

Phase XI involved five familiarization problems and 15 Simulated Environmental Training problems. These problems progressed in complexity. The first series was at the 75 percent volume of air traffic level. If the controller did not successfully handle this series, up to eight hours of additional classroom instruction and/or additional problems could be given. Wright initially failed the 75 percent level series but passed after receiving some additional instructional problems. However, her failure at the 90 percent level, even with additional instructional problems, resulted in her removal.

Wright maintains that the agency's failure to provide the required training at Phase VIII made her unprepared for Phase XI. In this connection, her two supervisors jointly prepared a training report which stated:

> The student [Wright] just did not seem prepared for this level of training (intensity of the problems). The student was given two additional problems which would qualify as passes if they were graded problems, however they contained many of the same deficiencies. A major problem seemed to be that Barbara started this course without a proper background to succeed. She did not have the associate radar course that the new IPG allows for, nor was she given the opportunity to do the radar associate functions in the live traffic environment. Barbara knew the surrounding sectors' altitudes and boundaries but was not always able to use them properly in the simulation environment because she had not done this often enough prior to the course. Also, due to the shortness of the course a student who encounters the problems that Barbara did has almost no chance of recovering because there is no

provision in the national training program [sic].

On her potential for success, they wrote:

> Ms. Wright's associate radar training was minimal compared to what students are receiving now and how much a pre-phase XI controller can and may receive. This confusion is discouraging for the potential OJT instructors as well as the students. We feel it has been particularly damaging to potential controllers without prior Air Traffic Control experience. In our opinion Ms. Wright could succeed in Phase XI and become a good controller. She needs added training to bring her confidence *up to Phase XI entry level.* [Emphasis added.]

The instructors' comment about "what students are receiving now" refers to the change in Phase VIII training which increased the required number of radar training problems from 8 to 12 and provided for up to 20 practice problems.

We need not detail the course of the long proceedings before the MSPB. It suffices to say that the initial decision of the administrative judge held for Wright on the sole ground that the agency failed to consider mitigation of the penalty. The full board vacated and remanded for a full adjudication of the merits. In a second decision the administrative judge again reversed the removal action on the ground that the FAA committed a prohibited personnel practice under 5 U.S.C. § 2302(b)(11) (1982) by failure to provide effective training, a merit principle set forth in 5 U.S.C. § 2301(b)(7) (1982). The full Board reversed. The Board agreed with the administrative judge that Wright did not receive all the training due her at Phase VIII but ruled against her because she did not establish that "had appellant received all eight problems of Phase VIII, she would have passed Phase XI."

*Opinion*

I

Our jurisdiction over a final decision of the Board rests on 28 U.S.C. § 1295(a)(9) (1982). On appeal from the Board, our

standard of review is statutorily prescribed. Under 5 U.S.C. § 7703 (1988), this court may set aside a Board decision if it is found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, obtained without following applicable procedures, or unsupported by substantial evidence on the record. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768, 774 n. 5, 105 S.Ct. 1620, 1624 n. 5, 84 L.Ed.2d 674 (1985). We conclude that the Board's decision must be reversed because the Board erred as a matter of law and because under the correct burden of proof, substantial evidence does not support the ground for dismissal.

## II

Unlike the vast majority of government positions, developmental air traffic controllers enter an "up or out" training course which they must pass through to become a Full Performance Level controller. *See Gaudette v. Department of Transp.*, 832 F.2d 1256 (Fed.Cir.1987); *Hanratty v. Federal Aviation Admin.*, 780 F.2d 33 (Fed. Cir.1985). Under Chapter 75 of the Civil Service Retirement Act, 5 U.S.C. §§ 7501–7543 (1988) (CSRA), an adverse action is sustainable only if it promotes the efficiency of the service. 5 U.S.C. § 7702(b) (1988). An adverse action, such as removal, promotes the efficiency of the service if the grounds for such action, *inter alia*, relate to an employee's failure to perform prescribed duties satisfactorily. In this case, the duties which the employee failed to perform were the requirements for Phase XI of the prescribed course.

In any removal action under Chapter 75, the agency bears the burden of proof before the MSPB to establish by a preponderance of the evidence that the adverse action is taken for the efficiency of the service. *See Jackson v. Veterans Admin.*, 768 F.2d 1325, 1329 (Fed.Cir.1985); 5 U.S.C. § 7701(c)(1)(B) (1988). The agency also bears the initial burden of going forward with evidence to establish a *prima*

*facie* case. *See Hale v. Department of Transp.*, 772 F.2d 882, 885 (Fed.Cir.1985); *Schapansky v. Department of Transp.*, 735 F.2d 477, 482–83 (Fed.Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

With respect to the "up and out" program in question, the agency will make a *prima facie* case for removal by showing that the trainee received the established training course and failed. In its opening statement, the agency recognized that it bore the burden of proof and asserted that Wright had "received all the training appropriate for the phases that she was processed through, and that she failed her training." To prove that Phase VIII training was given in its entirety, the agency put in the testimony of the Assistant Manager for Training (Peahl) and the Manager of the Air Traffic Division (Lucas). Neither was the supervisor in charge of Phase VIII training. Wright then put forth the testimony of another trainee in the class, Mr. Nicosia–Russin,[2] who gave specific testimony of the training required by the IPG and the agency's failure to provide that training. The Board found, as had the administrative judge, that the general statements made by the agency's witnesses with respect to training were overcome by the more specific testimony of Wright's witness with respect to what training was actually given to the class. The Board found Mr. Nicosia–Russin to be "a credible and articulate witness who described his learning candidly and in great detail," and it found further that the Phase VIII training was not provided.

The Board then considered who had the burden of proof of the effect of the omitted training. Both parties had offered proof on the significance of the omission. The agency sought to show that Phase VIII had no nexus to Phase XI. Ms. Wright offered additional testimony of Mr. Nicosia–Russin that, had he become more proficient at Phase VIII, he could have passed Phase XI.

2. This trainee also failed but was offered and accepted another type of position; the two other members of the class successfully completed training. Whether the other members of the class entered with radar experience, *e.g.*, from the military, is not of record.

She also relied on her supervisors' report quoted above.

■ The Board held that the trainee had the burden to establish that "had she received all eight problems in Phase VIII, she *would have passed* Phase XI" (emphasis added). Not only did the Board set up an impossible standard for Wright to meet, *i.e.*, to show she "would have passed,"[3] but also the Board committed an egregious error of law in misplacing the burden of proof. As indicated, the agency bears the ultimate burden to prove by a preponderance of the evidence throughout the case that the trainee was properly removed. No reason in law or logic warrants shifting the burden of proof (or persuasion) to the trainee to prove that, *but for* the omitted training, he/she *would* have passed to the next level. The agency set up the training requirements which, in its judgment, were a necessary foundation for achievement of successive levels of performance. In some instances, the burden of proof is properly shifted to a defendant with respect to matters peculiarly within his/her knowledge.[4] However, the proof of the insignificance of specified training is a matter peculiarly within the knowledge of the FAA, not the trainee. Having specified that a prescribed course of instruction is necessary, the agency is hard pressed to say, in a removal proceeding, that all of the training is not necessary. We do not say that the FAA may not, in appropriate circumstances, urge that omitted training has no nexus to a trainee's failure, but we do hold that the FAA bears the burden of proof of that fact, not the trainee.

■ Having concluded that the Board erred as a matter of law in its placement of the burden of proof, nevertheless, we conclude that a remand for reconsideration by the Board on the merits under the proper standard is neither warranted nor necessary. The error in result here clearly rests on the legal error. At best, the FAA's evidence "suggest[ed]" (the term of the Board) that Phase VIII instruction was not intended to prepare trainees for Phase XI. However, as the agency now provides even more instruction at Phase VIII, the conclusion is inescapable that at least the then-required eight keyboard radar problems at Phase VIII were necessary to prepare a trainee adequately for later success at Phase XI. The evaluation of Wright submitted by her supervisors unequivocally supports that conclusion. While the absence of the early radar segment of the course might not have been significant to those who entered the program with previous radar experience, obtained, for example, in the military, the program was obviously designed so that those new to radar operations, persons such as Wright, could achieve competence. Otherwise, no one lacking radar experience could be accepted into the program.

We conclude that the FAA failed to establish that Phase VIII radar training had no nexus to Wright's failure at Phase XI. Accordingly, substantial evidence does not support that Wright's removal was for the efficiency of the service.

In view of the above conclusion, we need not address Wright's arguments that she should have been given the training as now required for Phase VIII (an issue we see as pertinent to violation of the merit principles of 5 U.S.C. § 2301(b)(7) (1988)), nor need we address the FAA's failure to consider a less severe penalty than removal. Further, Wright's arguments concerning prejudice by reason of the processing of her removal under Chapter 75 rather than under Chapter 43 are moot.

### Conclusion

Because the FAA failed to establish its case for removal of Barbara Wright, the

---

**3.** *See Mercer v. Department of Health & Human Servs.*, 772 F.2d 856, 859 (Fed.Cir.1985) (quoting *Cornelius v. Nutt*, 472 U.S. 648, 657, 105 S.Ct. 2882, 2887, 86 L.Ed.2d 515 (1985)); *Adams v. Department of Transp.*, 735 F.2d 488, 496 (Fed. Cir.), (Nies, J., concurring) (Harmful error [in 5 U.S.C. § 7701(c)(2)(A) ] ... raised the question: Did the wrongful procedure harm the employee in the presentation of his defense so that a different result *might* have been reached? (emphasis added)), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

**4.** *See McCormick on Evidence*, § 337 (3d ed. 1984).

case is remanded to the Board with instructions to order the FAA to reinstate Barbara Wright as of January 10, 1986, with the back pay and benefits to which she is entitled. Ms. Wright is also entitled to appropriate reorientation and refresher instruction. An application for reasonable attorney fees under 5 U.S.C. §§ 504, 5596(b) (1988),[5] and/or 28 U.S.C. § 2412 (1982), which have been incurred by Ms. Wright for this appeal, will be entertained in the absence of the FAA's agreement to pay the same.

### Costs

Costs are awarded to petitioner.

REVERSED.

---

5.  *See e.g., Massa v. Department of Defense,* 833 F.2d 991, 993 (Fed.Cir.1987); *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1465 (Fed.Cir.1986) (in banc).