**Arturo VIDAL, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE,
Respondent.**

**No. 97–3386.**

United States Court of Appeals,
Federal Circuit.

May 14, 1998.

Neil C. Bonney, Neil C. Bonney & Associates, P.C., Virginia Beach, VA, argued for petitioner.

Janet E. Smith, Attorney, Appellate Div., U.S. Postal Service, Washington, DC, argued for respondent. With her on brief were

Frank W. Hunger, Asst. Atty. Gen., and David M. Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, Washington, DC; and R. Andrew German, Managing Counsel, Legal Policy, U.S. Postal Service. Of counsel was Anthony H. Anikeeff, Assistant Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

In this appeal, Arturo Vidal challenges a decision by the Merit Systems Protection Board (the "Board") affirming as modified a decision by an Administrative Judge (the "AJ"). *See Vidal v. United States Postal Serv.*, 75 M.S.P.R. 191 (1997). The AJ upheld the decision by the United States Postal Service (the "agency") to remove Vidal for failure to satisfy job qualification requirements for an upgraded machine operator position to which he was reassigned. *See Vidal v. United States Postal Serv.*, No. DC–0752–96–0310–I–1 (Initial Decision Mar. 19, 1996). Vidal argued that he should not have been removed but instead should have been returned to his prior part-time position operating a different machine for which he was qualified. We conclude that the Board applied an incorrect legal standard concerning whether Vidal's removal promoted the efficiency of the Postal Service. The Board considered efficiency in isolation and failed to apply the comparative analysis required by settled Board law. We hold, therefore, that the Board's decision to affirm Vidal's removal was an abuse of discretion as not in accordance with law. The appropriate legal test for considering removal actions in these circumstances had previously been settled by the Board, and the agency therefore had ample opportunity to present evidence to meet its burden of proof under this test; we note, however, that the Federal Circuit has never explicitly adopted the Board's test before today. Thus, we vacate the decision and remand this case to the Board for further fact-finding, based on the existing evidentiary record, in accordance with this opinion.

## BACKGROUND

Vidal was hired by the agency in 1993 as a part-time flexible ("PTF") clerk, and was assigned to operate a flat sorting machine ("FSM").[1] For two years, his performance operating that machine was satisfactory.

In 1995, a permanent position operating a different machine—a multi-purpose letter sorting machine ("LSM")—opened and was posted for bids in accordance with the agency's national collective bargaining agreement (the "national agreement"). The LSM is more difficult to operate than the FSM at the standard of accuracy required by the agency. No employees volunteered for the position; therefore, pursuant to the requirements of the national agreement, Vidal, the PTF clerk with the most seniority, was involuntarily reassigned to the permanent LSM position.

While Vidal received training on the LSM during a portion of each work day, he continued to work several hours each day on the FSM. To qualify for the LSM position, an employee must achieve a score of 98.0% accuracy on the LSM keyboard; Vidal's highest score during his training period was 96.0%. Because of his failure to meet the minimum qualifying score for his new position, Vidal received a Notice of Proposed Removal on September 27, 1995, charging him with unsatisfactory job performance. Pending removal, Vidal continued his training on the LSM keyboard, and improved his score to 97.3%, still below the minimum required score of 98.0%. Therefore, on October 12, the Plant Manager issued a decision to remove Vidal for his failure to attain the requisite score; the removal became effective on November 9, 1995.

Vidal appealed his removal to the Board. The AJ, in her initial decision, concluded that the agency had proved by a preponderance

[1.] It is our understanding that PTF clerks at the Postal Service are neither "temporary" employees nor "part-time" in the traditional sense. According to the national collective bargaining agreement, PTF clerks are "regular" employees with protected seniority status. Furthermore, at oral argument, the agency explained that PTF clerks may be required to work, but are not guaranteed, full-time hours. It is our impression that the operation of the FSM required that Vidal's performance as a PTF clerk be almost, if not entirely, full-time.

of the evidence that Vidal had failed to meet the qualification requirements for his reassignment. The AJ then noted that, although in general the efficiency of the service is not promoted by reassigning a skilled employee from a job he can perform to required standards into one which he cannot and then removing him, "legitimate management reasons" may allow such a removal action in some circumstances, citing *Majors v. United States Postal Service*, 3 M.S.P.B. 254, 255, 3 M.S.P.R. 146, 149 (1980). *See Vidal*, slip op. at 3 (Initial Decision). The AJ then determined that, although the national agreement prevented the agency from disciplining or discharging an employee who volunteered for a new position and then failed to qualify for that position, the national agreement did not protect an employee such as Vidal, who was reassigned involuntarily to a new position. The AJ therefore concluded that Vidal's removal was proper.

The Board denied Vidal's petition to review the initial decision, but reopened the appeal on its own motion pursuant to 5 C.F.R. § 1201.117 (1997). The Board affirmed the decision upholding Vidal's removal, focusing in its opinion solely on the AJ's interpretation of the national agreement and concluding that it made no provision to protect PTF employees who are involuntarily reassigned to a permanent position for which they later fail to qualify. The Board also modified the AJ's decision with respect to Vidal's allegation of disability discrimination, concluding that Vidal had in fact properly raised the issue as an affirmative defense. The Board determined, however, that Vidal failed to prove the allegation because he introduced no evidence at all to suggest the agency knew of his visual impairment when it reassigned him.[2] Chairman Erdreich, however, filed a dissenting opinion, noting in part that the agency had failed to present any evidence suggesting Vidal could not continue to serve in his original PTF position on the

FSM after he had failed to qualify on the more difficult LSM.

Vidal filed a timely petition for review, challenging both the Board's interpretation of the national agreement and the Board's conclusion that his removal promoted the efficiency of the service. The petition was submitted for our decision following oral argument on March 4, 1998. We have jurisdiction over this petition under 28 U.S.C. § 1295(a)(9) (1994).[3]

## DISCUSSION

Our review of Board decisions is strictly limited by statute; we may not reverse a Board decision unless it is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. *See* 5 U.S.C. § 7703 (1994); *Wright v. Department of Transp.*, 900 F.2d 1541, 1544 (Fed.Cir.1990). We conclude, however, that the decision to sustain the agency's removal here cannot withstand our review. The removal was upheld because the Board agreed it promoted the efficiency of the service, but the Board's analysis was not in accordance with law because it failed to consider whether it was more efficient to remove Vidal than to retain him in his prior position.

## I. The National Collective Bargaining Agreement

■ At the outset, we examine the terms of the national agreement to determine whether, as Vidal contends, it mandates his retention by protecting him from discipline or dismissal for his failure to qualify for the LSM position. Article 37, section 5, paragraph A(4) establishes that "[p]art-time flexible employees who have exercised a preference [for a vacancy in a permanent position] and fail to qualify shall not be discharged or disciplined as a result of such failure." The agency relies on this provision, arguing that

---

2. Vidal is a veteran who receives service-connected disability compensation based on a 10% rating for his right eye. Vidal's vision is 20/50 in his right eye. As the AJ noted in her initial decision, however, Vidal's vision in his left eye is 20/20, and therefore he met the minimum vision requirement for the LSM position (which requires at least 20/40 vision in one eye).

3. As required by Federal Circuit Rule 15(c)(1), Vidal filed a statement that his "claim of discrimination ... raised before the Board has been abandoned and will not be raised or continued in this or any other court."

because this protection accrues only to employees who volunteer for a new position, employees who are reassigned involuntarily by operation of the national agreement are by omission not protected from discipline or removal. The agency contends, therefore, that Vidal's removal was required after he failed to qualify for the new LSM position. The Board agreed with the agency's interpretation.

We are convinced, however, that Vidal's removal was not required by the national agreement. While it is true that the plain language of the national agreement does not *prevent* the agency from removing Vidal once he failed to qualify for the LSM position, neither does it *require* the agency to remove Vidal. We conclude, therefore, that the terms of the national agreement are not dispositive in this case.

## II. The Removal Must Promote the Efficiency of the Service

Because it cannot rely on the national agreement as requiring Vidal's removal, the agency must demonstrate, by a preponderance of the evidence, that Vidal's removal promoted the efficiency of the service. *See* 5 U.S.C. § 7701(c)(1)(B) (1994); *Wright,* 900 F.2d at 1544. In general, "the efficiency of the service may not be promoted where an agency moves an employee out of a job he is skilled in, places him into a job he cannot handle, and then removes him. However, legitimate management reasons can underlie such a result in some cases." *Majors v. United States Postal Serv.,* 3 M.S.P.B. 254, 255, 3 M.S.P.R. 146, 149 (1980). The AJ in her initial decision relied on this rule to affirm Vidal's removal, but the AJ failed to make any findings as to how Vidal's removal promoted the efficiency of the service or why his removal was more efficient than his retention in his original PTF position operating the FSM.

We agree that the Board, in reviewing a removal decision by an agency, must consider whether a legitimate management reason justified reassigning an employee from a position in which he performed well to a position for which he failed to qualify. There may be many valid reasons that support an agency's decision to assign involuntarily a qualified employee to a new, more

difficult position for which he may or may not qualify. *See, e.g., Wright,* 900 F.2d at 1544 (noting that "developmental air traffic controllers enter an 'up or out' training course," and that the agency can make a prima facie showing that efficiency of the service justifies removal "by showing that the trainee received the established training course and failed"); *Sullivan v. United States,* 189 Ct. Cl. 191, 416 F.2d 1277, 1281–82 (1969) (explaining that, if the relevant job standards require an employee to train and qualify for a more difficult position, an employee who fails to qualify may be removed). We agree that Vidal's reassignment from the PTF position on the FSM to the permanent position operating the more difficult LSM was a legitimate management decision because it was required in these circumstances by the provisions of the national agreement.

The AJ and the Board failed to recognize, however, that consideration of whether Vidal's reassignment was based on a legitimate management reason does not end the legally-required inquiry. Merely showing that the transfer was based on a legitimate management reason is not enough; under *Majors,* the agency must further demonstrate that the efficiency of the service would be promoted *more* by the employee's removal than by the employee's retention in his former position. *See* 3 M.S.P.B. at 256–57, 3 M.S.P.R. at 150. In circumstances involving a change in position prior to removal, we agree with the Board's statement of the law that "part of the agency's burden is to demonstrate that reaching [promoting involuntarily] appellant for the new position *and then removing him* for scheme failure [failure to qualify for the new position] *promotes the efficiency of the service more than would his retention in or return to his former position." Id.* (emphasis added). To the extent there is any confusion, we hereby explicitly adopt the legal test set forth by the Board in *Majors.* In Vidal's case, the Board failed to perform this comparative analysis.

There are some positions for which training for the next level position is an explicit job requirement set forth in either the job standards or some other controlling regulation or formal agency policy. A common example of these so-called "up-or-out" or

"up-grade training" positions is air traffic controller. *See, e.g., Wright,* 900 F.2d at 1544; *Sullivan,* 416 F.2d at 1280. In *Sullivan,* for example, the Court of Claims noted that the job specification for each level of air traffic controller required, as part of the job, a variety of training courses, on-the-job training, and successful promotion to the next level. *See* 416 F.2d at 1279. Furthermore, the court noted that "the Agency training program is designed to produce fully qualified journeymen air traffic controllers." *Id.* at 1281. The court therefore concluded that, although low level, air traffic controller "trainees" did perform a variety of functions that were useful to the agency, "the performance of such service was itself a form of training and . . . a necessary prerequisite to participation in the formal up-grade training program." *Id.* Thus, according to the Court of Claims, the plaintiffs' failure to qualify for the next level position justified their removal by the Federal Aviation Administration (the "FAA"). *See id.* at 1282–83. Similarly, in *Wright,* the petitioner's removal would have been justified for failure to meet the qualification requirements at one level in her series of training courses if the FAA had been able to demonstrate that it actually provided her with the necessary training prior to her removal. *See* 900 F.2d at 1544–45. In *Wright,* however, the removal decision was reversed when it became clear that an earlier phase of necessary training had never been provided to the petitioner's training class. *See id.*

The situation here is not comparable to that in *Sullivan* or *Wright,* because the PTF position which Vidal held was not an up-or-out position. The agency implies that, because the national agreement requires that the senior PTF be promoted into a vacant permanent position where no other qualified candidates bid on it, Vidal's PTF position was an up-or-out position. But Article 37, section 5, paragraph C(6) simply states that "[i]f there are no remaining currently qualified part-time flexibles for a duty assignment, the senior part-time flexible . . . will be assigned and placed into training." This provision of the national agreement is simply a procedural mechanism by which vacancies may be filled; it does not change the job standards applicable to employees in PTF positions. Furthermore, there is no indication, either in

the national agreement or in the PTF job standards, that all PTF clerks are required to train and qualify for permanent positions. Thus, the evidence in the record does not support the agency's implicit contention that Vidal's PTF position on the FSM was an up-or-out position, such that his failure to qualify for the LSM automatically required his removal.

We do not suggest that only up-or-out or up-grade training employees who fail to qualify for the next job level can legitimately be removed, however. Indeed, there may be many other situations in which an agency's efficiency would be better served by removing an employee who failed to qualify for a higher or more difficult position than by retaining that employee in his former position. The Board in *Majors,* for example, suggested several circumstances that might justify the removal of an employee who failed to qualify for a new position: "It may well be that appellant's return to his prior position was not possible due to the operation of applicable provisions of the National [Collective Bargaining] Agreement, or because there were no vacant slots for him there." 3 M.S.P.B. at 256–57, 3 M.S.P.R. at 150. Similarly, in *Springer v. United States Postal Service,* 7 M.S.P.B. 63, 7 M.S.P.R. 143 (1981), the appellant's removal was found to be justified when, after a Postal Service reorganization, the position which he had held and performed satisfactorily for fifteen years was abolished, he failed to qualify for a clerk position, and he refused to accept an alternative position as a cleaner. *See id.* at 64–65, 7 M.S.P.R. at 145. Alternatively, in this case, perhaps the agency was phasing out the use of the FSM, or was downsizing its staff by either reassigning or dismissing all PTF clerks or allowing their ranks to thin through attrition and non-replacement. Any of these reasons, or others about which we could easily speculate but which have not been raised here, might well have justified Vidal's removal.

But while we might hypothesize as to the possible rational management goals which might justify the agency's removal of Vidal, the agency cannot; the agency must bear its burden of proof. The agency must produce actual evidence or argument to suggest it would have achieved greater efficiency from

Vidal's removal than it would have from his retention. Furthermore, it is not our role as a reviewing court to infuse the Board's opinion with the fact-finding necessary to sustain the decision. To succeed before the Board, the agency was required to demonstrate that removing Vidal was more efficient than retaining him in his original PTF position. As far as we can surmise from the Board opinions and the record on appeal, this it has failed to do.

The agency initially relied simply on the terms of the national agreement and Vidal's failure to achieve a qualifying score to justify its removal action. The agency provided no argument or direct evidence that we can discern to explain why Vidal could not have been returned to his original PTF position.[4] Furthermore, the record does not indicate that the agency even considered retaining Vidal in a PTF capacity, much less explain why retaining him as an employee was less efficient than removing him. Yet Vidal had performed the PTF job for two years in a satisfactory manner, and he continued to perform his necessary FSM duties satisfactorily while he trained for the new LSM position.

On appeal here, the agency similarly failed to advance any argument or point to any evidence that arguably might prove Vidal's removal was more efficient for the agency than his retention as a PTF clerk. It appears, therefore, that the agency failed to meet its burden of proof; however, given the Board's failure to apply the test it required in *Majors*, and its inadequate findings with respect to the efficiency analysis, we cannot be sure.

The facts of Vidal's appeal appear almost identical to the facts of *Majors*, in which the Board clearly enunciated the correct legal standard, and applied that standard to reverse the agency's removal decision. In *Majors*, the appellant had been "promot[ed] to a distribution clerk machine position pursuant to provisions of the National Agreement" after successfully and satisfactorily operating a letter sorting machine for five years. 3 M.S.P.B. at 254, 3 M.S.P.R. at 147. When he failed qualify on the required "scheme" for

the new position, he was removed. *See id.* On appeal to the Board, he argued that he should have been retained in his prior position rather than removed, and the Board agreed. *See id.* at 255–57, 3 M.S.P.R. at 149–50. Specifically, the Board found that although the appellant had been promoted for a legitimate management reason, the agency had failed to show that the appellant's retention in his original position, after he failed to meet the requirements to operate the new machine, was impossible or inefficient. *See id.* at 255–57, 3 M.S.P.R. at 150. The Board held that "the efficiency of the service has not been promoted where, as here, the agency slotted an employee out of a job in which he had performed well for five years, into a position which he could not handle, and then removed him." *Id.* Similarly, the agency has presented no explanation for why removing Vidal altogether was more efficient than returning him to his original PTF duties operating the FSM.

We are unable to determine from the record before us whether the agency failed altogether to present the necessary evidence to support its claim that removing Vidal was more efficient than retaining him, or whether the agency did present sufficient evidence and the Board simply failed to conduct the final comparative step in the required *Majors* analysis. We therefore remand this case to the Board for additional consideration of the evidence already presented, if any, by the agency that would explain why Vidal's removal would promote the efficiency of the service more than his retention. We do not intend the agency to have another opportunity to present evidence to the Board on the efficiency issue; rather, we simply hold that the Board's failure to conduct the comparative aspect of the analysis was an error of law. We believe the Board should have the opportunity to reconsider the evidence before it and to make the finding required by its own precedent in *Majors*, which we have approved here.

### III. Request for Attorney Fees

Finally, we recognize that Vidal has requested attorney fees pursuant to the Equal

---

**4.** Indeed, the agency at oral argument abandoned its earlier contention that PTF clerks do not occupy "positions" and therefore the agency

could not have returned Vidal to his original PTF job on the FSM because there was no position to which it could return him.

Access to Justice Act, codified in part at 28 U.S.C. § 2412 (1994). According to Federal Circuit Rule 47.7(a), a request for fees on appeal may be filed "within 30 days after entry of judgment or of an order denying rehearing, whichever occurs later." Vidal's request therefore is premature. Furthermore, Vidal failed to provide any detailed evidence of the costs incurred because of this appeal, as required by Federal Circuit Rule 47.7(b). Vidal may resubmit a request for fees with supporting documentation at the appropriate time.

## CONCLUSION

Because under applicable law the Board must re-examine the facts of this case in light of the correct legal test to determine whether Vidal's removal would in fact promote the efficiency of the service more than would his restoration to his prior position, we

*VACATE AND REMAND.*

## COSTS

The costs of this appeal shall be borne by the agency.