Lloyd H. HOLMES, Petitioner,

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 94–3308.

United States Court of Appeals, Federal Circuit.

June 28, 1995.

---

Dennis L. Friedman, Philadelphia, PA, argued, for petitioner.

Hal Shapiro, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and James M. Kinsella, Asst. Director.

Before PLAGER, SCHALL, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Concurring opinion filed by Circuit Judge PLAGER.

SCHALL, Circuit Judge.

Lloyd H. Holmes appeals the April 4, 1994 decision of the Merit Systems Protection Board (Board) in Docket No. PH–0752–89–0485–X–2. *Holmes v. Department of Veterans Affairs*, 61 M.S.P.R. 497 (1994). In its decision, the Board dismissed Holmes's petition for enforcement of a settlement agreement between him and the Department of Veterans Affairs (VA or agency). The Board held that the VA had complied with the neutral reference provisions of the agreement, and thus had not breached the agreement. We vacate and remand.

## BACKGROUND

Holmes was employed by the VA for approximately four years as a police officer at the VA Medical Center in Philadelphia, Pennsylvania, until he was removed on July 24, 1989. Holmes appealed his removal to the Board, but the appeal was dismissed after he and the VA entered into a settlement agreement, pursuant to which he resigned from the agency. The Board retained jurisdiction to enforce the terms of the agreement. *Holmes*, 61 M.S.P.R. at 499.

Under paragraph 5 of the settlement agreement, the VA was obligated to provide a "neutral reference" to potential future em-

ployers who sought information regarding Holmes's VA employment history. The neutral reference requirement was spelled out in paragraph 8 of the agreement:

8. The neutral reference shall include but not be limited to date hired, position as Police Officer GS–5, history of fully satisfactory performance ratings, letters of appreciation received dated Jan. 2, 1986 and August 15, 1986, and present status of leave without pay for personal reasons as of July 24, 1989. No negative information shall be disclosed. It is understood by the parties that the Agency will issue a fully satisfactory performance rating for 1988–1989.

After leaving the VA, Holmes applied for a position as a Park Ranger with the National Park Service (Park Service). His name subsequently was removed from the list of persons eligible for the position, however. On May 7, 1993, Holmes filed a petition for enforcement with the Board. In it, he alleged that the VA had failed to comply with paragraph 8 of the settlement agreement by failing to give the Park Service a neutral reference with respect to his VA employment and that, as a result, the Park Service had removed his name from the list of those eligible for the Park Ranger position. In support of his petition, Holmes proffered a copy of a memorandum written by Stephen M. Sitarski of the Park Service. In the memorandum, Mr. Sitarski indicated that the Park Service had been unable to get a usable reference concerning Holmes from Ken McLean of the VA. As required by paragraph 7 of the settlement agreement, the VA had designated Mr. McLean as one of only two people authorized to give a neutral reference regarding Holmes's VA employment.[1]

The Board issued an acknowledgement order on May 10, 1993, notifying the VA that it had 15 days to "show proof" that it had complied with the settlement agreement. The VA responded with an affidavit prepared by Mr. McLean, in which he summarily denied that he had failed to comply with para-

graph 8 of the settlement agreement. In addition, the VA informed the administrative judge that it had learned that Debra Sturm of the Park Service was the person who had sought a reference on Holmes from Mr. McLean. The VA also informed the administrative judge that it had learned that Ms. Sturm had prepared a report of her telephone conversation with Mr. McLean. Further, the VA told the administrative judge that Vanessa Russell, Personnel Officer of the Park Service, had "refused to provide Agency counsel with [the Sturm] report without a signed authorization from the Appellant" and that Ms. Sturm herself had "declined to speak with Agency counsel." The VA asked that Holmes's petition for enforcement be dismissed or, alternatively, "that the Board order a full evidentiary hearing on the matter." In his reply to the VA's response, Holmes submitted the declaration of his attorney at that time, Sharon Dietrich. In her declaration, Ms. Dietrich referred to an unsigned, unsworn "Declaration of Debra Sturm" which she had prepared for Ms. Sturm's signature after speaking with her. Ms. Dietrich stated that Ms. Sturm had refused to sign the declaration, a copy of which Ms. Sturm attached to her own declaration.

Paragraphs 2 through 6 of the declaration which Ms. Sturm allegedly refused to sign read as follows:

2. Mr. McLean told me that he was not Mr. Holmes'[s] direct supervisor, but he confirmed that he was the person designated by the VA to supply a reference for Mr. Holmes. Although he said that there was no problem with Mr. Holmes, he did not provide any specific information. He said that he could not provide any specific information because he was not Mr. Holmes'[s] direct supervisor and did not have Mr. Holmes'[s] file in front of him.

3. Mr. McLean did not provide me with the date that Mr. Holmes was hired, nor did he tell me that Mr. Holmes had a history of fully satisfactory performance ratings, that he had received two letters of

---

1. Paragraph 7 of the settlement agreement provided in pertinent part as follows: "The [VA] agrees that neither ... [the] Chief of Medical Center Police, nor any other supervisor if contacted will make any comments on the appellant's prior work history but will refer all inquiries to Mr. Sepe and/or Mr. McLean."

appreciation, or that he had taken leave without pay for personal reasons as of July 24, 1989.

4. Mr. McLean did not offer to call me back after he located Mr. Holmes'[s] file. I did not ask him to call back, because he was not Mr. Holmes'[s] direct supervisor, and I did not anticipate getting further information from him.

5. I found the contact with Mr. McLean to be a weird experience. I am accustomed to being referred to a designated person for a reference, but it was unusual to not be able to get any useful information from the designated person.

6. Because of the strangeness of this telephone call, I got the impression that Mr. Holmes had had a problem with the people with whom he had worked at the Veterans Administration.

In further support of his reply, Holmes submitted his own declaration. In it, he stated that he took to Ms. Sturm for her signature the declaration prepared by Ms. Dietrich. According to Holmes, "Ms. Sturm read the declaration and said that as far as she recalled, it was correct." Holmes continued: "she stated that she wanted to check her notes of her interview with Mr. McLean to be absolutely sure, and she wanted to speak with Vanessa Russell of the Personnel Department to get permission to sign it." Holmes stated that, when he returned later that day to pick up the statement, "Ms. Sturm advised me that she would not sign it, because Ms. Russell had advised her not to sign it."

On August 4, 1993, the administrative judge issued his enforcement recommendation. Because, in his view, the McLean affidavit did not respond directly to the specific factual allegations raised by Holmes, the administrative judge concluded that the VA had not rebutted Holmes's allegations. Accordingly, he recommended that "the agency be found in noncompliance with the neutral reference provisions in the settlement agreement" and that Holmes "be allowed to set aside the settlement agreement and go forward with his original claim."

On September 3, 1993, the VA filed a brief requesting that the Board set aside the administrative judge's enforcement recommendation.[2] Among other things, the agency stated that it was in possession of "new and material evidence." Specifically, the VA told the Board that it had obtained a copy of the report Ms. Sturm prepared concerning her telephone conversation with Mr. McLean. According to the VA, the Sturm report corroborated Mr. McLean's denial that he had failed to provide a neutral reference, as required by the settlement agreement. In its brief, the VA outlined the steps it had undertaken to obtain the Sturm report:

After receipt of the Enforcement Recommendation of August 4, 1993, Agency counsel sought the assistance of the Justice Department to obtain information from the National Park Service. Prior to this time, counsel had used all reasonable and diligent efforts short of litigation to learn about the McLean interview from the Park Service. When the Assistant Superintendent of the Independence National Historical Park, Dennis Ridenbach, was put on notice of possible Justice Department intervention, he authorized his employees to cooperate.

Citing its decision in *McDonough v. United States Postal Service,* 60 M.S.P.R. 122, 125–26 (1993), as standing for the proposition that new evidence "that constitutes a further explanation of the agency's efforts to comply with the Board's order will ... be considered," the Board agreed to consider the Sturm report. *Holmes,* 61 M.S.P.R. at 502. The Board viewed the Sturm report "[a]s an elaboration of the explanation of what transpired during the telephone [conversation between Ms. Sturm and Mr. McLean and thus] a fuller explanation by the agency of its efforts to comply [with the settlement agreement]." *Id.*

Turning to the merits, the Board concluded that the Sturm report supported the VA's contention that, through Mr. McLean, it had

---

**2.** Under 5 C.F.R. § 1201.183(a)(6)(ii) (1994), a party that disagrees with an administrative judge's enforcement recommendation "must file a brief supporting its nonconcurrence in the recommendation."

provided a neutral reference within the meaning of paragraph 8 of the settlement agreement. *Id.* at 503. For this reason, the Board held that Holmes had not met his burden of establishing that the VA had breached the agreement, and denied the requested relief. Accordingly, the Board denied Holmes's request that the settlement agreement be rescinded. *Id.* From its opinion, there is no indication that, in reaching its decision, the Board considered the Sturm report *together with* the other evidence of record; namely, the Sitarski memorandum and the declarations submitted by Holmes as part of his reply to the VA's response to his enforcement petition.

## DISCUSSION

 We affirm a decision of the Board unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed. Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987). On appeal, Holmes bears the burden of establishing error in the Board's decision. *Cheeseman,* 791 F.2d at 140.

 Holmes argues first that the Board erred when it agreed to consider the Sturm report after the administrative judge had issued his enforcement recommendation. This point requires little discussion. Procedural matters relative to evidentiary issues fall within the sound discretion of the Board and its officials. *Curtin v. Office of Personnel Management,* 846 F.2d 1373, 1378 (Fed. Cir.1988). As noted above, the Board viewed the Sturm report as "a fuller explanation by

the agency of its efforts to comply [with the settlement agreement]." Beyond that, the VA's response to the enforcement petition and its brief to the Board following the administrative judge's enforcement recommendation—both discussed above—make it clear that the Sturm report only became available to the VA after the Park Service "was put on notice of possible Justice Department intervention."[3] In other words, the VA explained to the Board why it had been unable to come forward with the Sturm report sooner.[4] The Board did not abuse its discretion by agreeing to consider the Sturm report.

Holmes's principal contention on appeal is that the Board erred in failing to conclude, based upon the evidence before it, that the VA had breached the settlement agreement by not giving the Park Service the neutral reference required by paragraph 8 of the agreement. Holmes asks us to reverse the Board's decision or, alternatively, to remand the case for a hearing.

 A settlement agreement is a contract. *Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988). A contract is breached if one of the parties fails to comply with a provision of the contract in a way that is material. *Link v. Department of the Treasury,* 51 F.3d 1577, 1582 (Fed.Cir.1995). Whether the VA failed to comply with paragraph 8 of the settlement agreement turns on the factual question of what Mr. McLean said to Ms. Sturm about Holmes when she called him regarding the Park Ranger position. On that point, the evidence of record is in conflict.

Certain evidence suggests that the VA did not comply with the requirements of paragraph 8. For example, the Sturm report does not list any of the specific items of information required to be disclosed by the VA as part of a neutral reference under the

---

3. We trust that the Park Service will cooperate in connection with any further proceedings before the Board.

4. *See Smith v. United States Postal Service,* 54 M.S.P.R. 566, 568–69 (1992) (an agency may not submit new evidence in its response to a compliance recommendation, absent an explanation as to why the evidence was not submitted to the administrative judge); *see also* 5 C.F.R.

§ 1201.58(c) (1994) ("Once the record closes, no additional evidence ... will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed."); 5 C.F.R. § 1201.115(c) (1994) ("The Board ... may grant a petition for review when it is established that ... [n]ew and material evidence is available that, despite due diligence, was not available when the record closed.").

settlement agreement. In addition, the declarations filed by Holmes and his former attorney, Ms. Dietrich, support the contention that Mr. McLean's reference did not comply with paragraph 8.

Other evidence, though, supports the argument that the VA did comply with the settlement agreement. For example, the Sturm report does not disclose that Mr. McLean provided any negative information about Holmes in his discussion with Ms. Sturm, while in his own affidavit, Mr. McLean recites the information he gave the Park Service and swears that "[n]o negative information was disclosed by me and my actions were in full compliance with the Settlement Agreement." [5]

■ In short, there is conflicting evidence regarding the key issue before the Board—whether Mr. McLean provided a neutral reference to Ms. Sturm as required by paragraph 8 of the settlement agreement. Under these circumstances, the Board erred as a matter of law in ruling in the VA's favor after crediting the Sturm report as support for the McLean affidavit without taking into account all the evidence of record. Put another way, the Board erred by not undertaking the task of addressing and coming to grips with the conflicting evidence in the record, and then deciding the case after having done so. "[O]n balance, th[e] record presents a legitimate factual issue of whether there was a breach" of the settlement agreement. *Stewart v. United States Postal Service*, 926 F.2d 1146, 1149 (Fed.Cir.1991). For the reason just stated, we hold that further Board proceedings are required in order to resolve this factual issue.[6]

## CONCLUSION

For the foregoing reasons, the decision of the Board is vacated and the case is remanded for further proceedings consistent with this opinion.

## COSTS

Costs to Holmes.

VACATED AND REMANDED.

PLAGER, Circuit Judge, concurring.

The issue presented by the parties in this case is a narrow factual one: did the VA breach the "neutral reference" settlement agreement. I agree that the Board's decision does not reflect consideration of the conflicting evidentiary record, and join the opinion of the court in its remand for the limited purpose of that determination.

In footnote five, the court points out the broader difficulties raised by "neutral reference" settlement agreements. These agreements arise when an agency is unhappy about an employee's performance or conduct, and takes steps to discharge the employee. (The statute governing such steps calls it a "removal.") The employee resists. The dispute is settled by an agreement under which the employee agrees to resign rather than be fired, and the agency agrees not to reveal why it wished to remove the employee.

Such an agreement contains an inherent moral hazard. From the viewpoint of an employee, faced with the threat of such an adverse personnel action, a settlement agreement with a neutral reference requirement provides the opportunity for the employee to misrepresent to prospective employers his previous employment record. From the viewpoint of the current employer, the agreement requires the employer, when information about the employee's conduct on the job is sought, to deliberately withhold material

---

**5.** The VA and Holmes are entitled to have the settlement agreement enforced in accordance with its terms. However, settlement agreements containing no negative information requirements like the one here put agency officials such as Mr. McLean in a difficult position. For example, what does such an official do if, after he or she gives a "neutral reference" about a former employee, the person requesting the reference says "Are you aware of any negative information regarding this person?". At that point, if such information exists, the official must either lie,

breach the settlement agreement by telling the truth, or refuse to answer the question. None of these alternatives is very appealing.

**6.** We express no views on the merits of the dispute between Holmes and the VA. Neither do we express any views on the question of whether, on remand, an evidentiary hearing is required. That is a matter for the Board to decide after hearing from the parties.

information which it knows is necessary to an informed decision by a prospective employer, and thus to misrepresent the employee's employment record in important respects.

However denominated, a "neutral" reference under these circumstances is not an honest reference. It may serve as a subtle signal to knowledgeable prospective employers that there is some undisclosed problem, in which case the employee has been misled into believing he is getting something he is not. A less knowledgeable prospective employer, on the other hand, not privy to the subtle signal, will receive a deliberately misleading statement which, if relied upon, may cause the prospective employer to be misled to its detriment. Moreover, as the court's opinion notes in footnote five, an honest official of the current employer, called upon for a reference, and recognizing that possibility, is placed in an impossible position.

This situation is different from that in which an agency simply agrees not to volunteer information for which it is not asked. These neutral reference agreements require that, when asked, material information be withheld, and in many cases that the agency report fully satisfactory ratings. Whatever the legal implications may be for such agreements, based as they are on an agreement to engage in deliberate misrepresentation, their ethical status is highly questionable. Furthermore, the practice of one government agency palming off an unacceptable employee on another government agency by withholding material evidence concerning the employee's conduct hardly serves the public interest.

Reasonable settlement of legitimate disputes is to be encouraged. There no doubt are personnel disputes in which an amicable resolution will require some degree of forgiveness. But honest compromise does not mean that fraudulent concealment to the detriment of third parties should be condoned. One need not condemn all settlement agreements that contain a neutral reference provision in order to have serious reservations about its use in cases in which what is contemplated is deliberate misrepresentation of the employee's record. In my view, agencies contemplating such agreements, and in particular their participating legal counsel, should consider carefully the implications of their conduct.[1]

---

1. In addition to the applicability of relevant provisions of the Codes of Professional Responsibility, counsel may wish to consider Anthony T. Kronman, *The Lost Lawyer: Failing Ideals of the Legal Profession* (Harvard Univ. Press 1993); Mary Ann Glendon, *A Nation Under Lawyers* (Farrar 1994).