**Raul O. PAGAN, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 97–3395.

United States Court of Appeals, Federal Circuit.

March 16, 1999.

Elaine Rodriguez–Frank, of San Juan, Puerto Rico, argued for petitioner.

Robert Steinbuch, Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director.

Before NEWMAN, PLAGER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

Raul O. Pagan appeals the denial by the Merit Systems Protection Board ("Board") of his petition for enforcement of a settlement agreement. The agreement resulted from a prior Board proceeding in which Pagan had appealed his dismissal from the Department of Veterans Affairs ("DVA"). In the appeal now before us, the Board found that Pagan failed to prove that the DVA breached the agreement. Because we find that the DVA did violate the terms of the settlement agreement, we vacate the decision of the Board, and remand the case for the Board to craft an appropriate remedy.

## BACKGROUND

From February 12, 1989 until November 27, 1995, Mr. Pagan worked at the Puerto Rico National Cemetery ("PRNC") as a Program Support Assistant for Office Automation. Mr. Pagan received "fully successful" evaluations on his annual reviews from 1989 to April 1992. From April 1992 through March 1995, Mr. Pagan achieved "highly successful" evaluations and cash awards for his high level of performance.

Despite Mr. Pagan's good reviews, the PRNC in 1995 notified Mr. Pagan of his proposed removal and placed him on administrative leave status. The notice of proposed removal listed fourteen charges against Mr. Pagan, including: improperly paying various PRNC expenses from imprest funds, recommending his future wife for a PRNC job without disclosing the relationship, refusing to take orders from his direct supervisor, acting disrespectfully toward his direct supervisor, failing to follow sick leave

procedures, and neglecting to fill out the proper forms and providing payment for an office plumbing job.

Subsequently the PRNC Director, Jorge L. Lopez, sustained the charges against Mr. Pagan. Mr. Lopez considered Mr. Pagan's prior work record, but concluded that removal was reasonable and appropriate in light of the seriousness of the sustained charges.

Mr. Pagan appealed his removal to the Board. The assigned Administrative Judge ("AJ") held a hearing during which the AJ presided over negotiations and helped the parties reach a settlement agreement. The AJ wrote the agreement after both parties expressed their interests. In particular, Mr. Pagan told the AJ that he had to have a clean record because he was in the process of interviewing for a U.S. Postal Service ("USPS") job.

The relevant portions of the settlement agreement provide:

(3) The appellant agrees not to apply to the Puerto Rico National Cemetery (PRNC) for the next 5 years.

.    .    .    .    .

(6) The appellant will receive a clean record. All charges and actions will be removed from the appellant's personnel file.

.    .    .    .    .

(8) The terms of the agreement will remain confidential between the parties. The appellant agrees not to disclose the terms to any other individual or agency employee. The agency agrees not to disclose the terms to any prospective employer.

*Pagan v. Department of Veterans Affairs*, No. NY–0752–96–0141–I–1 (Initial Decision, Apr. 15, 1996) (accepting the agreement into the record).

The settlement agreement called for Mr. Pagan's resignation from the PRNC for personal reasons, and the withdrawal of his Board appeal. In exchange, the PRNC provided Mr. Pagan with back pay from December 1995 to April 1996, and $8000 in settlement fees. The agreement specifically stated that it was entered into voluntarily, and the Board retained jurisdiction over the agreement for enforcement purposes.

While his appeal was pending and negotiations were on-going, Mr. Pagan applied for a job with the USPS. In his application, Mr. Pagan disclosed his removal and the pending appeal. Following the settlement agreement ending his Board appeal, Mr. Pagan explained during an April 3, 1996 interview with the USPS that the Board hearing had concluded with a confidential settlement agreement. In response to a USPS request for clarification, Mr. Pagan referred to the confidential nature of the agreement, then later submitted a standard agency form showing his voluntary resignation effective April 2, 1996. After the interview, the USPS Human Resources Office notified Mr. Pagan that they were expecting some documents from the PRNC.

In his response to a USPS request to the DVA for more information regarding Mr. Pagan, PRNC Director Lopez did not answer "yes" or "no" to the question: "Would you rehire this individual?" Instead, Mr. Lopez placed an asterisk next to the question and answered: "Due to circumstances beyond my control no comment [sic] can be made at this time." Another question asked Mr. Lopez to rate Mr. Pagan's attendance, work performance, behavior, and attitude using an excellent to unsatisfactory scale. Mr. Lopez crossed out the whole scale without rating Mr. Pagan in any of the above categories. Shortly thereafter, the USPS informed Mr. Pagan that there were no positions available.

Mr. Pagan filed a motion for enforcement of his settlement agreement with the Board on December 19, 1996. He alleged that the DVA had violated the terms of the agreement by Mr. Lopez's response to the USPS employment questionnaire, and by Mr. Lopez's alleged verbal disclosure of the settlement agreement terms to PRNC individuals and a USPS employee.

The AJ who had written the settlement agreement also heard Mr. Pagan's enforcement motion. The AJ found that Mr. Pagan failed to sustain his burden that the agency did not comply with the terms of the agreement. The AJ found that the settlement

agreement is silent as to what kind of reference or recommendation would be given upon request, but that Mr. Lopez's questionnaire answers did not violate the agreement because his response did not divulge any of the terms of the agreement. Furthermore, the AJ determined that Mr. Lopez's alleged violation of the agreement through oral statements was unsupported by the record. Consequently, the AJ denied Mr. Pagan's request for enforcement. The AJ's initial decision became the final decision of the Board on June 4, 1997.

Mr. Pagan is now before this court appealing the denial of his request for enforcement by the Board. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295 (1994).

## DISCUSSION

### A.

On appeal, Mr. Pagan alleges that the DVA violated the terms of his settlement agreement through Mr. Lopez's written response to the USPS questionnaire, and through Mr. Lopez's verbal disclosure of the settlement terms to various individuals.

The interpretation of a settlement agreement is an issue of law. *See Mays v. United States Postal Serv.*, 995 F.2d 1056, 1059 (Fed.Cir.1993) ("The settlement agreement is a contract, of course, and its interpretation is a matter of law."); *Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed.Cir.1988). We independently review the Board's legal determinations for correctness. *See Perry v. Department of the Army*, 992 F.2d 1575, 1578 (Fed.Cir.1993). To the extent the settlement agreement is clearly stated and understood by the parties, it is enforced according to its terms. If any ambiguity is found, our role is to implement the intent of the parties at the time the agreement was made. *See King v. Department of Navy*, 130 F.3d 1031, 1033 (Fed.Cir.1997).

In this case, Mr. Pagan agreed to voluntarily resign in exchange for "a clean record," with all charges and actions removed from his personnel file. Mr. Pagan told the AJ in particular that a "clean record" was necessary because he was in the midst of applying for a USPS position. Clearly, Mr. Pagan's intent was to eliminate any information in his record about his adverse removal from the PRNC so it would not affect his chances of future employment.

We read "clean record" in the context of the agreement to mean that Mr. Pagan's personnel record was to be restored to its former state – with his "fully successful" and "highly successful" ratings uncontroverted by any evidence of charges or the related removal action. Neither the evidence nor the arguments offered by the DVA persuade us that the parties intended and agreed to any alternative meaning. *See King*, 130 F.3d at 1033 ("[W]ords used by the parties to express their agreement are given their ordinary meaning, unless it is established that the parties mutually intended and agreed to some alternative meaning." (citing *Perry*, 992 F.2d at 1579)).

In exchange for Mr. Pagan's resignation, the DVA agreed to remove all charges and actions from his personnel record and to refrain from disclosing the terms of the confidential agreement. Though quite specific on those points, the agreement did not spell out the nature of the reference the DVA was to provide upon request from Mr. Pagan's potential employers. Thus, though the purpose of the settlement agreement was clear, exactly how to respond to the question: "Would you rehire this individual?" was less so. On the basis of a "clean record" in Mr. Pagan's personnel file, Mr. Lopez could check "yes," but on the basis of the facts as he knew them, to be honest he should check "no."

The follow-up question did not pose the same dilemma. It requested that Mr. Pagan be rated in four employee quality categories on a scale from unsatisfactory to excellent. Given the agreement, Mr. Lopez should have rated Mr. Pagan on his attendance, work performance, behavior, and attitude based on a personnel file with "[a]ll charges and actions ... removed," rather than by crossing out the rankings for the four categories.

Although the agency did not promise to provide a favorable reference, or even any reference at all, it was required to act, in

matters relating to Mr. Pagan, as if he had a "clean record." The act of crossing out the portion of the USPS questionnaire asking that Mr. Pagan be ranked according to his attendance, work performance, behavior, and attitude, and then returning the form in that condition would have strongly suggested to any recipient of the form that Mr. Pagan did not have a "clean record" with the DVA. Thus, Mr. Lopez's response to the USPS questionnaire constituted a breach of the settlement agreement.

## B.

■ Mr. Pagan also contends that the DVA verbally violated the agreement. The AJ found that Mr. Pagan failed to support his allegation that Mr. Lopez orally divulged the terms of the agreement. This finding was based on a credibility determination which is "virtually unreviewable" on appeal. *See Hambsch v. Department of the Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986). We find nothing in the record in this case to justify overturning this determination.

## C.

Settlement agreements may serve a useful purpose in terminating disputes without the necessity for further administrative or judicial proceedings. The incorporation into such agreements of a "clean record" requirement has proven to be a source of problems – problems that necessitate the very administrative or judicial proceedings sought to be avoided. As a result, this court has expressed its concern with agency settlement agreements that allow an unsatisfactory employee to resign in exchange for a personnel record clear of all charges and adverse actions. *See Thomas v. Department of Housing & Urban Dev.,* 124 F.3d 1439, 1442 (Fed. Cir.1997) ("It may well be that it is virtually impossible for agencies to ensure that settlement agreements such as this ... can be performed to the letter.... Perhaps as a matter of sound governmental administration such agency agreements should be prohibited."). Indeed, such agreements invite trouble. The employee expects, perhaps unrealistically, that with a "clean record" potential employers will be unable to find out about adverse actions taken by the former employer. The former employer, when asked, must either outright lie, or attempt some artful evasion which, because other employers now recognize what these agencies do, in fact fools no one. This case is simply another example of how unsatisfactory these agreements may turn out to be.

Although reasonable settlement of employment disputes is commendable, when the agency is required to give no information or an agreed-upon "neutral" reference, "the practice of one government agency palming off an unacceptable employee on another government agency by withholding material evidence concerning the employee's conduct hardly serves the public interest." *Holmes v. Department of Veterans Affairs,* 58 F.3d 628, 634 (Fed.Cir.1995) (Plager, J., concurring) (commenting in the context of a settlement agreement requiring the agency to reply to potential employers with a "neutral" reference).

Furthermore, these agreements are often little more than a trap for an uninformed or unwary employee. The agency is in a better position to know and appreciate the potential problems such agreements present, both for the employee and for the employer; at a minimum the agency has the responsibility to ensure that the employee understands the problems, and that the agreement adequately addresses them. The Board has a difficult job sorting through some of these enforcement agreements, particularly those that are not well-drafted, but so long as agencies continue to sweep their personnel problems under a rug with holes in it, it is the Board's job to see to it that the parties receive that for which they bargained.

## CONCLUSION

For the above reasons, we vacate the Board's denial of Mr. Pagan's request for enforcement of his settlement agreement with the DVA. We remand the case to allow the Board to fashion an appropriate remedy for Mr. Pagan.

## COSTS

Costs to petitioner.

*VACATED & REMANDED.*