Margaret GODWIN, Petitioner,

v.

DEPARTMENT OF DEFENSE, Respondent.

No. 99–3333.

United States Court of Appeals, Federal Circuit.

Oct. 3, 2000

---

E. Taylor Poston, Armstrong, Poston & Lowe, P.A., of Tulsa, Oklahoma, argued for petitioner.

Joseph Trautwein, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David W. Ogden, Assistant Attorney Gen-

**1334**

eral; David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director; and Deborah P. Samuel, Trial Attorney.

Before BRYSON, LINN and DYK, Circuit Judges.

BRYSON, Circuit Judge.

Margaret Godwin appeals from a decision of the Merit Systems Protection Board denying her petition to have her original appeal reinstated on the ground that the agency materially breached the terms of a voluntary settlement agreement. We sustain the Board's decision that the agency did not breach the terms of the settlement agreement and therefore affirm.

## I

Ms. Godwin worked as a GS–7 civilian paralegal specialist in the legal office of the Defense Logistics Agency at Tinker Air Force Base in Oklahoma. The agency removed her from her position because she allegedly made false statements in a claim for worker's compensation benefits. Ms. Godwin appealed her removal to the Board, but before the appeal was decided, Ms. Godwin and the agency entered into a voluntary settlement agreement under which she withdrew her appeal and the agency allowed her to resign.

Ms. Godwin subsequently filed a petition to reinstate her appeal, contending that the agency had violated the settlement agreement. The following paragraphs of the settlement agreement are at issue:

5. Appellant will be carried in a leave without pay status from December 18 1995 until the effective date of her resignation, or until she secures other employment, whichever occurs first.

7. No break in service will provide a continuation of benefits during the period of no break in service, including health benefits, retirement benefits and all other benefits associated with no break in service.

8. The agency will remove all negative information from Appellant's person-nel file for the period of her employment with the Defense Logistics Agency and will forward a copy of the personnel file to Appellant's attorney.

10. Appellant will direct any potential future employers seeking an employment reference on Appellant to contact Nancy Rusch, Esq., Counsel to DDRW or Ms. Rusch's designee.

11. In response to any request(s) for reference(s) by any potential future employers, Nancy Rusch or her designee will advise that Appellant resigned from the agency for personal reasons, and that Appellant was rated at the highly successful level. No negative statement will be made.

## II

██ Ms. Godwin first argues that the agency breached paragraph 7 of the agreement by failing to credit her with annual and sick leave and failing to make Thrift Savings Plan (TSP) contributions on her behalf for the period she was carried on leave without pay status pursuant to paragraph 5 of the agreement. She contends that the "retirement benefits" to which she was entitled under paragraph 7 include TSP contributions and that the "other benefits associated with no break in service" referred to in paragraph 7 include the accrual of annual and sick leave.

██ The interpretation of a settlement agreement is an issue of law as to which we exercise plenary review. See Pagan v. Dep't of Veterans Affairs, 170 F.3d 1368, 1370 (Fed.Cir.1999). Under the applicable regulations, persons who are in leave without pay status are not entitled to the accrual of leave. See 5 C.F.R. §§ 630.202–204 (employees earn leave "while in pay status"). Moreover, contributions to a government employee's TSP account are based on the employee's pay, and because Ms. Godwin was on leave without pay sta-

tus, she was not entitled to have the agency make contributions to her TSP account. *See* 5 C.F.R. § 1600.8. Nothing in paragraph 7 of the agreement provided that those rules would be altered in Ms. Godwin's case. Instead, paragraph 7 simply provided that Ms. Godwin would be accorded a continuation of those retirement, health, and other benefits associated with "no break in service" status. That is, she would continue to enjoy health benefits and life insurance coverage, and she would continue to accrue service credit toward her retirement eligibility. Because paragraph 5 made it clear that she would not be on pay status between December 18, 1995, and the time of her resignation or the time she obtained other employment, she was not entitled to those benefits that are reserved for pay status employees.

### III

■ Ms. Godwin's second contention is that the agency breached paragraph 8 of the agreement, which required the agency to "remove all negative information from [Ms. Godwin's] personnel file for the period of her employment with the Defense Logistics Agency." Ms. Godwin does not contend that the agency failed to remove all negative information from her personnel file, but instead complains that the agency also removed positive information from her file, such as awards, positive performance evaluations, and credit for work performed outside her duties, and that by doing so the agency breached the agreement.

The administrative judge found that the agency fulfilled its obligations under the settlement agreement by removing all negative information from Ms. Godwin's personnel file. The agreement was silent as to the disposition of other information in the file. The removal of that information therefore did not violate the settlement agreement. Moreover, a government representative explained in the proceeding before the administrative judge that it was standard procedure for the agency to remove "temporary documents," including the "employee performance file" from an employee's official personnel file before forwarding that file to a new agency. *See* 5 C.F.R. § 293.405(a) (providing for removal of performance ratings from an employee's official personnel file when the file is sent from one agency to another). Ms. Godwin has failed to show that the government's conduct violated paragraph 8 of the agreement.

### IV

#### A

■ Ms. Godwin's final contention is that the agency violated paragraph 11 of the settlement agreement. Paragraph 10 of the agreement required Ms. Godwin to "direct any potential future employers seeking an employment reference" to Nancy Rusch, an agency attorney, or Ms. Rusch's designee. Paragraph 11, in turn, provided that in response to any request for references by any potential employers, Ms. Rusch or her designee would state that Ms. Godwin "resigned from the Agency for personal reasons, and that [she] was rated at the highly successful level."

Ms. Godwin asserts that the agency breached the mandates of paragraph 11 on two occasions. The first involved a prospective employer who sent a questionnaire to the agency containing 12 questions, including questions about Ms. Godwin's judgment and decisionmaking, and whether the agency would rehire her. Ms. Rusch returned the form without filling it out, but she attached a cover letter stating that Ms. Godwin had "left for personal reasons" and that she had "performed at a highly successful level." With respect to the form, Ms. Rusch stated that she could not answer specific questions regarding Ms. Godwin.

■ The second incident involved an inquiry that a prospective employer made first to Ms. Godwin's former supervisor, Preston Mitchell, and then to Ms. Rusch. In response to a set of specific questions, Mr. Mitchell stated that Ms. Godwin exceeded standards in her observation of

work hours, had an outgoing personality, and could secure important information on a case when others could not. When asked about her leave usage, Mr. Mitchell responded that Ms. Godwin "had an extended period of leave usage," which the administrative judge determined was true. With respect to most of the specific questions, however, the prospective employer reported that Mr. Mitchell declined to answer and instead laughed and "took the 5th." The prospective employer then contacted Ms. Rusch, who said that Ms. Godwin "met standards" with respect to her observation of work hours, the quality and quantity of her work, her interpersonal skills, and "accepting direction and accepting change." Ms. Rusch declined to answer several other questions, including whether the agency would rehire Ms. Godwin.

The administrative judge noted that the agreement in this case was "not nearly as broad" as similar agreements in other cases. Paragraph 10 obligated Ms. Godwin to refer prospective employers to Ms. Rusch or her designee. Ms. Rusch, or her designee, "could only reveal the information agreed to in the settlement, without making any negative statements." The agreement contained no other restrictions and did not "address what information other employees could disclose at other times." In light of the limited nature of the obligations imposed by paragraph 11, the administrative judge found that neither Mr. Mitchell nor Ms. Rusch had breached the agreement.

**B**

Although we have upheld the validity of settlement agreements of the general sort involved in this case, we have several times commented on the difficulties created by such agreements not to give negative recommendations regarding a former employee. *See Pagan v. Dep't of Veterans Affairs*, 170 F.3d 1368 (Fed.Cir.1999); *Thomas v. Dep't of Housing & Urban Dev.*, 124 F.3d 1439 (Fed.Cir.1997); *Holmes v. Dep't of Veterans Affairs*, 58 F.3d 628 (Fed.Cir.1995). Settlement

agreements that bind an agency to give a "neutral reference," as in *Holmes*, or to represent that the employee had a "clean record," as in *Pagan*, are particularly difficult to comply with: they bind the entire agency, and they make it necessary to decide whether a particular response, or refusal to respond, makes the reference not "neutral" or the employee's record appear not to be "clean." In *Pagan*, for example, this court held that the agency did not comply with its undertaking to represent that Mr. Pagan had a "clean record" when an agency representative crossed through portions of a questionnaire that asked for Mr. Pagan to be ranked according to attendance, work performance, behavior and attitude. *See Pagan*, 170 F.3d at 1373.

The agreement in this case, however, is narrower than those in the cases on which Ms. Godwin relies. In this case, unlike in *Thomas* and *Holmes*, the agreement was directed only to comments made by Ms. Rusch and her designee. Paragraph 10 required Ms. Godwin to refer prospective employers to Ms. Rusch or her designee for an employment reference, and paragraph 11 set forth the terms of what Ms. Rusch or her designee could say in response to such an inquiry. The agency was thus protected against the risk that a prospective employer would obtain a negative recommendation from someone other than Ms. Rusch—perhaps someone who was not aware of the settlement agreement or was not schooled in the proper manner of responding to inquiries governed by the agreement. Moreover, unlike in *Pagan*, the settlement agreement in this case imposed only three specific obligations on Ms. Rusch or her designee. Where pertinent, they were to "advise that [Ms. Godwin] resigned from the Agency for personal reasons," to state that she "was rated at the highly successful level," and to make "[n]o negative statements."

In her response to the first employer inquiry, Ms. Rusch complied with the terms of paragraph 11, stating that Ms.

Godwin had "left for personal reasons" and that she had "performed at a highly successful level." Ms. Rusch made no negative statements.

Ms. Rusch's answers to the second employer were likewise not inconsistent with her obligations under the agreement. The second employer apparently did not ask why Ms. Godwin left the agency and did not ask about her overall rating, so the first two components of paragraph 11 were inapplicable. Ms. Rusch satisfied the third requirement of paragraph 11—not to make any negative statements—because each question she answered was answered with the favorable response that Ms. Godwin "met standards" in four particular areas.

With respect to Mr. Mitchell, there was no evidence before the administrative judge that Mr. Mitchell was Ms. Rusch's designee within the meaning of the settlement agreement, so Ms. Godwin has failed to show that the settlement agreement covered the statements made by Mr. Mitchell. In any event, as the administrative judge found, Mr. Mitchell's responses to the questions that he answered were not unfavorable to her. The only specific response that could be regarded as negative was Mr. Mitchell's statement that Ms. Godwin "had an extended period of leave usage." The administrative judge, however, found that Mr. Mitchell's statement about Ms. Godwin's leave usage was true and did not constitute a release of negative information, particularly since Mr. Mitchell did not state or suggest that the leave was inappropriate or unapproved. The administrative judge's findings on that issue are supported by substantial evidence and we therefore decline to overturn them.

■ Ms. Godwin's principal complaint is not with the questions that were answered, but with the ones that were not. She argues that Ms. Rusch's refusal to answer certain questions left a negative impression on the prospective employers, and that Mr. Mitchell's statement that he "took the 5th" with respect to the questions he declined to answer had an even greater negative effect. As the administrative judge pointed out, however, the settlement agreement did not preclude Ms. Rusch or her designee from declining to answer certain questions. While recognizing that there is an inherent risk that a limited or neutral reference might be taken as a "subtle signal to a knowledgeable prospective employer that there is some undisclosed problem," the administrative judge concluded that Ms. Godwin, who was represented by counsel in the settlement negotiations, "was obviously willing to accept this risk as part of the overall benefits obtained by the agreement." We agree. Upon being asked a question falling outside the specific areas covered by paragraph 11 of the settlement agreement, as to which an honest answer would be negative, Ms. Rusch had three choices: to give a false favorable answer, thereby deceiving the inquirer; to give a truthful negative answer, thereby breaching the provision of the agreement prohibiting negative statements; or to decline to answer the question. In that situation, it was perfectly permissible for Ms. Rusch to choose the third option, thereby avoiding either lying or breaching an express term of the agreement. We decline to interpret the "negative statement" provision of the agreement to impose an affirmative obligation on Ms. Rusch to lie to any prospective employer if a truthful answer would be negative.

Mr. Mitchell's statement that he "took the 5th" in response to some of the questions asked of him is more troubling, but as noted above, Mr. Mitchell was not shown to be a designee of Ms. Rusch, and he was therefore not covered by paragraph 11 of the agreement. In any event, the question whether his reference to "the 5th," in context, constituted a negative statement is a factual matter. After analyzing Mr. Mitchell's comments, the administrative judge found that the agency did not fail to live up to its obligations under paragraph 11 of the agreement, and we are not prepared to conclude that that finding is unsupported by substantial evidence.

■ We emphasize once again our discomfort with agreements of the sort at issue in this case. They seem almost bound to lead to mischief. If the agency gives a recommendation that is unresponsive or qualified in some respect, the employee is likely to conclude that the agency has done something to signal that his tenure was other than a happy one, and that the agency has therefore breached the settlement agreement. On the other hand, if the agency misrepresents its true views as to the employee's performance, it deceives prospective employers who are relying on the agency for an accurate recommendation. For that reason, we will not readily construe such an agreement to require an agency to deceive prospective employers; indeed, if an agreement were construed in such a fashion, it might well be unenforceable as a matter of public policy. Instead, we will construe such agreements strictly according to their terms, and we will not assume that silence in response to particular inquiries necessarily constitutes a "negative comment" on the employee's performance.

*AFFIRMED.*