**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| CYNTHIA J. CAPUTO, | DOCKET NUMBER |
| Appellant, | CH-0752-17-0019-C-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: March 15, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Kevin L. Owen</u>, Esquire, and <u>Julie R. Gold</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Daniel S. Lacy</u>, Esquire, North Chicago, Illinois, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## ORDER

This matter is before the Board on the agency's petition for review of the compliance initial decision, which granted in full the appellant's petition for enforcement of the Board's final decision dismissing the appeal pursuant to a settlement agreement. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the agency has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review of the compliance initial decision and AFFIRM the compliance initial decision, referring the petition for enforcement to the Board's Office of General Counsel for additional processing and issuance of a final decision. *See* 5 C.F.R. § 1201.183(c).

## BACKGROUND

The appellant filed an appeal with the Board challenging the agency's decision to remove her. *Caputo v. Department of the Army*, MSPB Docket No. CH-0752-17-0019-I-1, Initial Appeal File, Tab 1. The parties subsequently executed a negotiated settlement agreement (NSA) resolving the appeal. *Caputo v. Department of the Army*, MSPB Docket No. CH-0752-17-0019-I-2, Appeal File (I-2 AF), Tab 5 at 4-15. The administrative judge accepted the NSA into the record for enforcement purposes, found that the agreement was lawful on its face and the parties understood its terms and freely entered into it, and dismissed the appeal as settled. I-2 AF, Tab 6 at 2-3.

The appellant filed a petition for enforcement, asserting that the agency breached the agreement by taking or failing to take the following actions required under the terms of the NSA: (1) expunge all records of the appellant's removal from her official personnel file (OPF) and provide evidence that it recalled and

rescinded any records detailing the removal from "records maintained in other official files of the agency"; (2) issue a notice of management directed reassignment (MDR); (3) provide evidence that the appellant was granted service credit for the period that she was held in Leave Without Pay (LWOP) status from the effective date of her removal through the date she was reinstated to her position; (4) enroll the appellant in a Combined Arms Center (CAC) Leadership Advanced Course; (5) provide evidence that a number of identified agency officials were contacted and instructed to expunge the appellant's removal and performance rating records; (6) prevent her Federal Employee Health Benefits (FEHB) enrollment from being canceled; (7) pay the appellant at the appropriate rate of pay agreed to under the terms of the NSA; (8) attempt to collect a debt that resulted from an overpayment arising from the appellant's Federal service prior to the effective date of the NSA; and (9) rescind and expunge the appellant's 2015 performance review documents, and provide new appraisals for the 2014-15, 2015-16, and 2016-17 appraisal cycles that were at "the same rating as she was rated in 2014." *Caputo v. Department of the Army*, MSPB Docket No. CH-0752-17-0019-C-1, Compliance File (C-1 CF), Tab 1 at 4-11.

After the agency failed to respond to the acknowledgement order and two separate orders to respond, C-1 CF, Tabs 3, 5, 8, and failed to appear for the scheduled telephonic status conference, C-1 CF, Tab 11, the administrative judge issued an initial decision granting the appellant's petition for enforcement based on the written record, C-1 CF, Tab 12, Compliance Initial Decision (CID). The administrative judge concluded that the appellant demonstrated that the agency was in material breach of each of the terms of the NSA identified above and that the agency had not produced any relevant, material, and credible evidence that it was in compliance with the contested terms of the agreement. CID at 2-10. As a consequence, the administrative judge ordered the agency to fully comply with each of the above terms, to submit to the Board and the appellant the name, title, grade, and address of each agency official charged with complying with the

Board's order, and to inform each official in writing of the potential sanctions for noncompliance. CID at 10-11.

Within the time limit for filing a petition for review of the compliance initial decision, the agency filed a pleading titled "Response to Order to Show Compliance," in which it asserted that it had fulfilled its obligations required under the NSA for several of the terms of the agreement and provided documentary evidence purporting to demonstrate compliance. *Caputo v. Department of the Army*, MSPB Docket No. CH-0752-17-0019-C-1, Compliance Petition for Review (CPFR) File, Tab 1. However, the agency also challenged the validity of the administrative judge's order of compliance for two of the agreement's terms. *Id.* at 2-6. Because the pleading included assertions that the agency was in compliance with the decision, the Office of the Clerk of the Board docketed the agency's statement of compliance as a compliance referral case under MSPB Docket No. CH-0752-17-0019-X-1 (X-1 AF), and processed the remainder of the agency's challenges to the compliance initial decision as a petition for review of the compliance initial decision. CPFR File, Tab 3 at 1-2. The Board issued identical acknowledgment orders for both the compliance referral case and the petition for review of the compliance initial decision. X-1 AF, Tab 3; CPFR File, Tab 3.

The appellant has responded in opposition to the petition for review, conceding that the agency is now in compliance with the term of the NSA requiring that it enroll the appellant in the CAC leadership course, but arguing that it remains in noncompliance with several terms of the agreement. CPFR File, Tab 5 at 4-10.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency was required to waive the annual leave overpayment debt and to reinstate the appellant's FEHB enrollment.</u>

A settlement agreement is a contract, and the Board will adjudicate a petition to enforce a settlement agreement in accordance with contract law.

*Walker-King v. Department of Veterans Affairs*, 119 M.S.P.R. 414, ¶ 9 (2013); *Young v. U.S. Postal Service*, 113 M.S.P.R. 609, ¶ 10 (2010). In construing the terms of a settlement agreement, the Board looks to the words of the agreement itself, which are of paramount importance, and assigns them their ordinary meaning unless the parties intended otherwise. *Smith v. Department of the Interior*, 113 M.S.P.R. 592, ¶ 8 (2010); *see Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988). When reviewing a settlement agreement, the Board is responsible for ensuring that "the parties receive that for which they bargained." *Walker-King*, 119 M.S.P.R. 414, ¶ 10 (quoting *Pagan v. Department of Veterans Affairs*, 170 F.3d 1368, 1372 (Fed. Cir. 1999)). Contract terms must be read "as part of an organic whole, according reasonable meaning to all of the contract terms[.]" *Walker-King*, 119 M.S.P.R. 414, ¶ 10 (quoting *Lockheed Martin IR Imaging Systems, Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997)).

Regarding the terms of the NSA that the agency challenges on petition for review, the agency disputes the administrative judge's conclusion that ensuring the appellant's continued enrollment in FEHB was one of the required terms in the NSA and further asserts that it was the appellant's own sustained inaction that resulted in the cancelation of her FEHB enrollment. CPFR File, Tab 1 at 4. Regarding the waiver of the debt the appellant incurred to the Defense Finance and Accounting Service (DFAS), the agency argues that it does not have authority to waive the debt. *Id.* at 5. The agency asserts that the debt resulted after the agency paid the appellant in full for her unused annual leave at the time she was originally removed from Federal employment, but then restored her full annual leave balance after she was restored to her position pursuant to the settlement agreement. *Id.* The agency argues that because the appellant has already been paid in full for the unused annual leave and the leave balance also was also fully restored, it does not have the authority to waive the debt and that doing so would unjustly enrich the appellant. *Id.*

*Debt collection waiver for unused annual leave overpayment*

The agency challenges the administrative judge's finding that it failed to comply with paragraph 1 of the NSA, which states that the agency agrees to "waive any claims against the Appellant, including any allegations of . . . overpayment, regarding her employment in [F]ederal service up to the effective date of this Agreement." I-2 AF, Tab 5 at 5. In the CID, the administrative judge concluded that the appellant provided evidence that she received two debt collection notices for overpayments from DFAS dated prior to the date of the NSA and that the agency failed to rebut the appellant's evidence. CID at 8-9; C-1 AF, Tab 1 at 34-46. Consequently, the administrative judge concluded that the agency was not in compliance with the overpayment waiver provision of paragraph 1 of the NSA. CID at 8-9. On review, the agency argues that irrespective of the waiver language in the NSA cited by the appellant, it does not have authority to waive the contested debt because doing so would be inconsistent with Federal regulations, or alternatively, that waiver of the debt would unjustly enrich the appellant. CPFR File, Tab 1 at 5. The appellant counters by arguing that the agency waived its right to challenge the debt collection waiver provision by failing to object below. CPFR File, Tab 5 at 9. The appellant argues that the only relevant consideration is that the effective date of the debt precedes the date of the NSA, which the agency does not dispute. *Id.*

As support for its argument that waiver of the debt would be contrary to Federal regulation, the agency cites 5 C.F.R. § 550.805(e)(2)(iv).[2] However, this provision is only applicable to awards of back pay made pursuant to the Back Pay Act, 5 U.S.C. § 5596, and nothing in the cited regulation precludes the parties of

---

[2] This provision states, in relevant part, that in computing a net back pay amount payable under 5 U.S.C. § 5596 ("the Back Pay Act"), an agency must deduct "[a]ny erroneous payments received from the Government as a result of the unjustified or unwarranted personnel action," and mandates that such payments "must be recovered from the back pay award," and subsequently identifies the types of payments that must be recovered, including "a lump-sum payment for annual leave (i.e., gross payment before any deductions)."

a negotiated settlement agreement from reaching an agreement to waive an overpayment, including one for unused annual leave. We find that the NSA at issue here unambiguously provided the appellant with a lump sum payment award, not an award of back pay, and that nothing in the agreement included an award of back pay that would bring the agreement within the purview of the Act or implicate the offset requirements in 5 C.F.R. § 550.805(e)(2)(iv). I-2 AF, Tab 5 at 5 (providing that "[the agency] shall pay to the Appellant a lump sum payment in the amount of one-hundred thousand dollars ($100,000.00), in lieu of any claims for pecuniary and non-pecuniary compensatory damages. This amount shall be paid in a lump sum with no deductions or withholdings").[3]

Regarding the agency's argument that the waiver of the debt would unjustly enrich the appellant, there is similarly no merit to that argument. The parties agree that the debt accrued as a result of the agency paying the appellant for her unused annual leave balance as of the date her removal went into effect, on September 17, 2016, which was prior to the June 9, 2017 settlement agreement, and that the agency (through DFAS) did not request payment for this debt until after the effective date of the agreement. C-1 AF, Tab 1 at 34-35, 41-42. Paragraph 1 unambiguously indicates that the agreement represents a "full and final resolution" of any outstanding claims regarding the appellant's employment in federal service up to the effective date of the agreement—including those related to claims of overpayment. I-2 AF, Tab 5 at 4. If the agency desired to exclude this debt from the settlement agreement, then it should have so indicated

---

[3] Additionally, under paragraph 3(t) of the NSA, the appellant explicitly agrees to "waive all other claims for back pay, costs, damages, interest, and all other legal or equitable relief," and paragraph 3(d)(iv) states that the agency will inform the Washington State Office of Administrative Hearings (the state agency responsible for administering unemployment benefits) that the appellant "is not being paid back pay for the period" during which her removal was in effect. I-2 AF, Tab 5 at 8, 12. Both provisions provide additional support for the conclusion that the lump sum payment the appellant received under the terms of the NSA was not an award of back pay under the Back Pay Act, and so the agency's argument that it is precluded by regulation from waiving the contested debts is unpersuasive.

in the agreement. *See Johnson v. U.S. Postal Service*, 108 M.S.P.R. 502, ¶ 16 (2008) (concluding that regardless of whether he was aware of his Board appeal rights, the appellant waived them when his union entered into a global settlement agreement on his behalf without expressly reserving them), *aff'd*, 315 F. App'x 274 (Fed. Cir. 2009). Accordingly, we find no error in the administrative judge's conclusion that the agency failed to comply with the debt waiver provision of the NSA. Consequently, based on the provided record, we conclude that the agency has failed to demonstrate that it has taken the necessary steps to comply with the debt waiver provision of the settlement agreement.[4]

*FEHB reenrollment*

The agency also argues for the first time on review that, despite the administrative judge's findings, nothing in paragraph 3(d) obligates it to restore the appellant's FEHB election to what it was prior to September 7, 2016. CPFR File, Tab 1 at 4. Specifically, the agency argues that the language in paragraph 3(d) requiring it to "rescind and expunge from the Appellant's Official Personnel File" the Standard Form 50 (SF-50) removing the appellant from Federal service did not impose any obligation on the agency to restore the appellant to status quo ante regarding her FEHB enrollment. *Id.* Alternatively, the agency argues that it was the appellant's own inaction that resulted in her benefits being canceled and provides a series of emails exchanged between the appellant and the agency's Human Resources representative, which the agency claims show that the appellant ignored the agency's repeated attempts to get her to sign an FEHB election form so that she could reenroll herself during the period from June 19, 2017, until her FEHB enrollment was canceled on July 28, 2017. *Id.* at 136-54.

---

[4] Although the NSA acknowledges that DFAS is a separate entity over which the agency has no control, the agreement also acknowledges that the agency will take reasonable measures to work with the appellant and DFAS to ensure compliance with the provisions of the agreement. I-2 AF, Tab 5 at 7; *see Tichenor v. Department of the Army*, 84 M.S.P.R. 386, ¶ 8 (1999) (rejecting the agency's argument that severance pay withheld by DFAS was not the result of the agency's action because the agency was using DFAS as its paying agent).

The agency asserts that despite making it clear to the appellant that the duty rested with her, she never completed and returned the FEHB enrollment form, and her benefits were terminated effective July 28, 2017. *Id.* at 4.

In response, the appellant argues that the agency waived any argument that the language in paragraph 3(d) did not require it to restore her to status quo ante with regard to her FEHB enrollment when it failed to respond to the administrative judge's orders to submit evidence and argument below. CPFR File, Tab 5 at 7. The appellant also disputes the agency's characterization of events, arguing that she did complete the FEHB enrollment form but that the agency nonetheless unilaterally canceled her FEHB enrollment. *Id.* at 8.

As previously noted, although the agreement does not specifically mention FEHB benefits, the administrative judge credited the appellant's interpretation of paragraph 3(d) of the agreement stating that the agency must "rescind and expunge" the appellant's removal SF-50 from her OPF, as obligating the agency to return the appellant to status quo ante by restoring the benefits election she had prior to being removed. CID at 7. Because the appellant provided evidence demonstrating that the agency had allowed her FEHB enrollment to lapse, and the agency failed to rebut that evidence, the administrative judge concluded that the agency breached this provision of the agreement. CID at 7-8.

In construing a contract, the Board must look first to the terms of the agreement to determine the intent of the parties at the time they contracted, as evidenced by the contract itself. *Greco*, 852 F.2d at 560. The Board will give a reasonable interpretation to those terms to carry out the parties' intentions and avoid absurd results. *See Wisdom v. Department of Defense*, 78 M.S.P.R. 652, 656 (1998) (noting that interpretations of settlement agreements that create absurd results are disfavored). Here, in addition to the requirement in paragraph 3(d) that the agency rescind and expunge any evidence of the appellant's removal from her OPF, there is additional evidence in the agreement of the parties' intentions to return the appellant to duty with the same set of pay and benefits

that she had prior to September 27, 2016. Paragraph 3(f), which instructed the agency to issue the MDR, also provided the appellant with training for her new position following reinstatement, assurances of future market salary and cost of living increases not less favorable than those she received in her previous position, and service credit for her period of LWOP. I-2 AF, Tab 5 at 9-10. Under paragraph 3(g), the agency agreed to reenroll the appellant in the student loan repayment program she had previously been enrolled in, and under paragraph 3(h), agreed to restore her sick leave balance to what it was prior to the removal action. *Id.* at 10.

Accordingly, under the circumstances of this case, it was reasonable for the administrative judge to determine that the intent of the parties under the agreement was to restore the appellant to status quo ante with regard to her benefits, including her FEHB enrollment status. CID at 7-8. Regarding the agency's argument that it was the appellant's actions, and not the agency's, that caused the breach, we find no merit to this argument. In disputing the agency's characterization of the events that took place leading up to the cancellation of her FEHB enrollment, the appellant has provided a copy of the signed FEHB enrollment form she submitted on June 30, 2017, on which the appellant identified her intention to "incur a debt" in order to continue her enrollment. CPFR File, Tab 5 at 8, 15-16. As additional support, the appellant includes an email she sent to an agency HR Representative dated July 12, 2017,[5] in which the appellant again referenced her desire to "incur a debt" for the unpaid premiums so that she would not lose her health insurance benefits. *Id.* at 8, 13-14. Finally, the appellant includes another email exchange between herself and a DFAS representative, in which the representative reproduced portions of an internal summary log regarding the status of the appellant's outstanding requests with DFAS, which indicate that the appellant's FEHB enrollment was canceled by agency officials, as opposed to at the request of the appellant. *Id.* at 8-9, 17-21.

---

[5] The agency's narrative erroneously states that the email was dated July 11, 2017.

Consequently, we conclude that the administrative judge did not err in construing the terms of the agreement to require that the agency restore the appellant to the same benefits election she had prior to September 7, 2016, and that the agency breached that term of the agreement when it allowed the appellant's FEHB enrollment to lapse, and failed to reenroll her to her prior enrollment status despite her timely requests that it do so.

The remaining issues of compliance are forwarded to the Board's Office of General Counsel.

In addition to outstanding issues of compliance regarding debt waiver and FEHB enrollment discussed above, outstanding issues of compliance remain concerning the agency's expunction of records documenting the appellant's removal from her personnel file, the appropriate rate of pay for the appellant's new position, and whether the agency issued a requisite MDR order, properly credited the appellant with LWOP during the removal period, and expunged and rescinded performance review documentation from the appellant's personnel file.[6] The agency submitted evidence and argument on these issues and the appellant submitted a response, which have been entered into the record in MSPB Docket No. CH-0752-17-0019-X-1. The Board's Acknowledgment Order for MSPB Docket No. CH-0752-17-0019-X-1, dated February 2, 2018, includes instruction for how the parties must proceed in that matter, which is pending before the Board's Office of General Counsel.

---

[6] There is one provision of the agreement that the agency claims it has complied with on review and that the appellant has not contested or addressed in its response. Paragraph 3(v) of the NSA required the agency to send letters to a list of identified agency officials within 30 days of the date of the NSA, instructing them to expunge certain records related to the appellant's removal from their records. I-2 AF, Tab 5 at 13. On review, the agency has asserted that it is in compliance with that provision and has attached copies of the letters that were sent or hand delivered to each of the identified agency officials, and the appellant has not argued that the agency's evidence does not demonstrate that it is in compliance. CPFR File, Tab 1 at 4, 124-35.

All subsequent filings should refer to MSPB Docket No. CH-0752-17-0019-X-1 and should be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C. 20419

Submissions may also be made by electronic filing at the MSPB's e-Appeal site (https://e-appeal.mspb.gov) in accordance with the Board's regulation at 5 C.F.R. § 1201.14.

The agency is reminded that, if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the Office of the General Counsel of the Merit Systems Protection Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case. 5 C.F.R. § 1201.183(a). The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with." 5 U.S.C. § 1204(e)(2)(A).

This Order does not constitute a final order and therefore is not subject to judicial review under 5 U.S.C. § 7703(a)(1). Upon the Board's final resolution of

the remaining issues in this petition for enforcement, a final order shall be issued, which shall be subject to judicial review.

Gina K. Grippando

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.